IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHAWN PETHTEL,

    Petitioner,

v.                                      Civil Action No. 1:07cv74
                                        (Judge Keeley)

THOMAS MCBRIDE, Warden,

    Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

**A. Petitioners' Federal Habeas Proceedings**

On June 4, 2007, the *pro se* petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner paid the required filing fee on July 13, 2007. On July 16, 2007, the undersigned conducted a preliminary review of the file and directed the respondent to show cause on the limited issue of the timeliness of the petition.

On August 15, 2007, the respondent filed a limited response in which he conceded that the petition was timely filed. Accordingly, on August 22, 2007, the undersigned directed the respondent to file a response on the merits of the petitioner's claims.

On September 20, 2007, the respondent filed an Answer and a Motion for Summary Judgment. Consequently, a Roseboro Notice issued the next day.

The petitioner filed his reply to the respondent's motion on November 26, 2007. This case is now before the undersigned for a report and recommendation on the respondent's summary judgment motion.

## B. Petitioners' Conviction and Sentence

On August 30, 1999, the petitioner was sent to the Orient Correctional Center in Orient, Ohio, to begin service of a one-year sentence imposed by the State of Ohio for a violation of the conditions of the petitioner's Ohio parole. Resp't Ex. 4 at 2. That sentence was set to expire on April 15, 2000. Id.

During its January 1999 term, a Grand Jury sitting in Ohio County, West Virginia, returned an indictment against the petitioner charging him with 20 counts of sexual assault in the third degree, three counts of filming a minor engaged in sexually explicit conduct, one count of conspiracy to film a minor engaged in sexually explicit conduct, two counts of possession with intent to deliver a controlled substance, one count conspiracy with intent to deliver a controlled substance, one count of nighttime burglary, one count of conspiracy to commit nighttime burglary, one count of grand larceny, and one count of conspiracy to commit grand larceny. Id. at 2-3. Because the petitioner was incarcerated in the State of Ohio at the time the indictment was brought, the Ohio County prosecutor lodged a detainer against the petitioner with the State of Ohio. Id. at 3. Notice was also sent to the Ohio prison system pursuant to and in compliance with the Interstate Agreement on Detainers Act ("IADA"), W.Va. Code § 62-14-1. Id.

Pursuant to the IADA, the petitioner was transported to Ohio County, West Virginia, for arraignment upon the West Virginia indictment on October 12, 1999. Id. Counsel for petitioner was present at the proceedings where a suppression hearing and trial date were also set. Id. At the conclusion of that proceeding, the Court was informed that the petitioner was serving a sentence in the State of Ohio. Id. Moreover, the prosecutor informed the Court that he planned to take action necessary to facilitate the petitioner's stay in West Virginia until the trial was had. Id. Defense

Counsel also informed the Court of the petitioner's wish to stay in the State of West Virginia, pending the outcome of those proceedings. Id. However, at the end of the proceedings, the Court ordered that the petitioner be remanded to the custody of the Sheriff for his return to the State of Ohio. Id. at 4.

On October 18, 1999, the Court held a hearing on defense counsel's motion to withdraw. Id. That motion was granted and petitioner was appointed new counsel. Id. During that proceeding, the Court was informed that the petitioner wished to remain in the State of West Virginia pending the outcome of his proceedings. Id. Moreover, the prosecuting attorney informed the court that he had worked out an arrangement with the State of Ohio, to keep the petitioner in West Virginia pending the outcome of his West Virginia proceedings. Id. at 5. The Court, however, ruled that the petitioner could only remain in the State of West Virginia for three days, in order to consult with newly appointed counsel. Id.

On October 20, 1999, the petitioner's newly appointed counsel filed a motion to withdraw. Id. A hearing was held wherein the motion was granted and further counsel was appointed. Id. The Court again permitted the petitioner to stay in West Virginia for only three days to meet with newly appointed counsel. Id. at 6. Following this hearing, the petitioner was returned to the State of Ohio to further serve his Ohio sentence. Id. At that time, the petitioner had spent 16 days in the State of West Virginia. Id. Although the petitioner did not object at that time to his transfer back to Ohio, the petitioner clearly expressed his desire to stay in the State of West Virginia pending trial, and never waived his rights pursuant to the IADA. Id. at 6-7. In fact, after his return to Ohio, the petitioner filed several motions seeking the dismissal of his West Virginia criminal charges pursuant to the anti-shuttling provision of the IADA. Id. at 7. At the expiration of the petitioner's Ohio

sentence, he was transported back to the State of West Virginia pursuant to a Governor's warrant. Id.

After the petitioner's return to West Virginia, the trial court conducted several hearings on the petitioner's motion to dismiss pursuant to the IADA. Id. The petitioner's motion was subsequently denied because the petitioner was returned to the State of Ohio for reasons of his own benefit. Id.

On November 16, 2000, the petitioner was tried before a jury on the 20 counts of sexual assault, three counts of filming a minor, and one count of conspiracy to film a minor. Id. at 8. The jury found the petitioner guilty on all counts. Id.

On November 28, 2000, the petitioner entered into a plea agreement on the one count of burglary and one count of possession of marijuana with intent to deliver. Id. Pursuant to that agreement, the remaining drug and burglary charges were dismissed. Id.

On December 5, 2000, the petitioner appeared for sentencing. Id. The petitioner received an indeterminate sentence of one to five years on each of the 20 sexual assault counts, as well as the conspiracy to film a minor charge, and the possession with intent to deliver charge. Id. The petitioner also received a 10-year sentence on each of the filming a minor charges and a 15-year sentence on the burglary charge. Id. Because all sentences were ordered to run consecutive, the petitioner's total indeterminate sentence is 53-155 years imprisonment. Id. at 8-9.

At sentencing, defense counsel again withdrew, and new counsel was appointed. Id. at 9.

## C. Direct Appeal

After a long and drawn out quest for transcripts, during which the petitioner was granted 11 extensions of time to file an appeal, the petitioner finally filed a timely appeal with the West Virginia

Supreme Court of Appeals ("WVSCA") on December 19, 2003. Id. at 9; see also Resp't Ex. 1 at 12-17. In his appeal, the petitioner asserted the following assignments of error:

> 1. The trial court erred when it refused to dismiss the charges against the petitioner after his rights under the Interstate Agreement on Detainers were violated.
>
> 2. The petitioner received ineffective assistance of counsel.
>
> 3. The petitioner's sentence was so disproportionate to the crimes he committed that it violates the Constitution of the United States and the West Virginia Constitution.

Resp't Ex. 2 at 4.

The petitioner's appeal was refused by the WVSCA on April 1, 2004. Id. at 1.

### D. Petitioner's State Habeas Corpus

On September 25, 2003, the petitioner filed a *pro se* state habeas petition.[1] Respt' Ex. 3. In the petition, the petitioner asserted the following grounds for relief:

> 1. Violations of Interstate Agreement on Detainers Act (IADA) and Alabama v. Bozeman, 121 S.Ct. 2079 (2001).
>
> 2. Ineffective assistance of counsel.

Id.

Following an evidentiary hearing, the Circuit Court of Ohio County granted the petitioner's state habeas petition on the ground that the petitioner's rights under anti-shuttling provision of the IADA were violated. Resp't Ex. 4. Moreover, the Circuit Court determined that pursuant to Bozeman, it was required to dismiss all the charges against the petitioner, with prejudice. Id.

However, that decision was later stayed pending appeal to the WVSCA. Resp't Ex. 3 at 6-7. On appeal, the WVSCA, by published opinion, reversed the circuit court. See Pethel v. McBride,

---

[1] The petitioner was later appointed counsel.

5

638 S.E.2d 727, 219 W.Va. 578 (2006). In doing so, the WVSCA made the following findings:

> 1. Any rights created by the provisions of the IADA are rights which are statutory in nature and which clearly do not give rise to the level of a right guaranteed by the Constitution of West Virginia, or the Constitution of the United States.
>
> 2. The IADA is not a jurisdictional statute.
>
> 3. A violation of the IADA is not cognizable in a postconviction habeas corpus action pursuant to W.Va. Code § 53-4A-1 (1967).
>
> 4. A criminal defendant's voluntary entry of a guilty plea waives all rights conferred under the IADA, including the right to dismissal of the charges in violation of its provisions.
>
> 5. In a case in which West Virginia is a receiving state under the IADA, any order dismissing the indictment, information, or complaint may be dismissed with or without prejudice.
>
> 6. It is not a violation of the IADA, if, prior to trial, a prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the State and an opportunity to be heard.[2]

Id. at Syllabus Points 1-6.

In addition, the WVSCA found that the Supreme Court's decision in Alabama v. Bozeman, supra, did not apply to the petitioner's case because he was proceeding on collateral review rather than direct appeal, id. at 737, and that the petitioner's failure to appeal its refusal of his appeal petition, waived any IADA claims the petitioner otherwise may have had. Id. at 747. Moreover, the WVSCA found that a criminal defendant waives his rights under the IADA by voluntarily entering

---

[2] During the October 18, 1999, motion hearing on counsel's request to withdraw, the petitioner asked to stay in the State of West Virginia pending his West Virginia criminal proceedings. Resp't Ex. 4 at 4. In addition, counsel for the State informed the trial court that he had already contacted Ohio authorities to arrange for the petitioner to stay in West Virginia pending his criminal charges in that state. Id. at 4-5. However, the trial court denied the request, by merely stating "[t]he problem is I don't want him here for an indefinite period. I don't want our county to have to pay the costs of keeping him." Id. (quoting hearing transcripts at 10). The trial court gave no other reason for returning the petitioner to the State of Ohio, other than that it did not want to pay the costs of keeping him. Moreover, based on the record currently before the Court, this exchange appears to be the only opportunity the petitioner and the state had to be heard on the issue prior to the petitioner's return to Ohio.

a plea of guilty. Id. at 744.

E. **Petitioners' Federal Habeas Claims**

In his federal habeas petition, the petitioner raises the following grounds for relief:

(1) The IADA was violated when the petitioner requested final disposition of his case in West Virginia while imprisoned in Ohio. Specifically, the anti-shuttling provision of the IADA was violated in that the petitioner was transferred to West Virginia, then back to Ohio, before his West Virginia case was finished.

(2) Ineffective assistance of counsel for advising the petitioner to plead guilty to burglary and drug related charges after he was convicted at trial of the sex related charges, despite the obvious IADA violations, thereby risking the petitioner's right to raise such violations in post conviction proceedings.

F. **The Respondent's Answer and Motion for Summary Judgment**

In the answer, the respondent generally denies that any violation of the petitioner's rights occurred. In addition, in his motion for summary judgment, the respondent asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. In support of his motion, the respondent asserts that the petitioner's claims are not cognizable on federal habeas corpus, that the petitioner has failed to state a claim upon which relief can be granted, and that the petitioner has failed to demonstrate that he is entitled to relief on any of his claims.

G. **The Petitioner's Reply**

In his reply, the petitioner argues that he has stated a cognizable claim for relief because Bozeman was applicable to his case on direct appeal pursuant to the Supreme Court's decision in Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final"). Moreover, the petitioner argues that his claims qualify for federal habeas review due to the exceptional circumstances of his case and the prejudice he suffered. Finally, the petitioner argues that there are genuine issues of material fact which preclude the granting of summary judgment. Thus, the

petitioner asserts that the respondent's motion for summary judgment should be denied.

## II. Standards of Review

### A. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing

8

the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

**B. Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's

determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S. C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

prejudice.'" Brecht, supra.

### III. Analysis

#### A. Alleged IADA Violations

The IADA is an agreement between the states which "creates uniform procedures for lodging and executing a detainer..." Alabama v. Bozeman, 533 U.S. at 148. "The Agreement provides for expeditious delivery of the prisoner to the receiving State [the state in which trial is to be had] for trial prior to the termination of his sentence in the sending State [the state in which the prisoner is incarcerated]. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." Id. As specifically pertains to this case, the IADA states:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

See W.Va. Code § 62-14-1 (also known as the "anti-shuttling" provision).

Here, the petitioner was incarcerated in State of Ohio serving a sentence imposed by the courts of that state when he was indicted in the State of West Virginia. Pursuant to the IADA, West Virginia officials obtained a detainer against the petitioner and secured his transfer to that state. Although the petitioner sought to stay in the State of West Virginia pending the resolution of his West Virginia criminal proceedings, he was sent back to Ohio after his arraignment, but prior to the final disposition of his West Virginia charges. It is therefore clear, and undisputed, that these actions violated the anti-shuttling provision of the IADA.

However, petitioner is simply not afforded federal habeas relief on this issue. In Bush v. Muncy, 659 F.2d 402 (4th Cir. 1981), the Fourth Circuit Court of Appeals found that although the

11

IADA is a federal law for purposes of federal habeas review, a violation of the IADA is not remediable under 28 U.S.C. § 2254. Bush at 407, 409. In doing so, the Fourth Circuit specifically recognized that the Circuits were split as to the viability of an IADA violation on federal habeas review. Id. at 407. Moreover, the Court noted the following:

> The problem of course is that not all violations of the "laws of the United States" may be asserted in a habeas corpus proceeding. "(T)he appropriate inquiry (is) whether the claimed error of law (is) 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '(i)t ... present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'"

Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974) (parentheticals in original).

Applying those standards to Bush's case, the Fourth Circuit determined that underlying the quoted passage of Davis

> is the perception ... that only those statutory rights of a fundamental nature closely related to constitutionally secured rights to fair prosecution and adjudication should be subject to vindication by collateral review of criminal convictions. Though these may include other rights than those directly related to the establishment of guilt or innocence, we do not think they extend to nontraditional statutory guarantees no matter how worthy of purpose that are peripheral to the historic central concerns with fundamental fairness in the prosecutorial and adjudicative processes leading to criminal conviction and confinement.

Id. at 409. Then examining the same trial-before-return (anti-shuttling) provision at issue in this case, the Fourth Circuit found that the basis for the provision was to "encourage minimum interruption of rehabilitative programs . . . and to protect prisoners against harassment by uncoordinated shuttlings between states." Id. Although the Fourth Circuit recognized the salutary nature of this provision, it nonetheless found that the anti-shuttling provision does not involve a "fundamental right historically considered critical to the protection of the criminal accused against

the unfair prosecution and trial by the state." Id. Therefore, the Court found that a violation of the anti-shuttling provision was not subject to collateral review under § 2254, absent a showing of prejudice.[3] Id.

Whether or not this Court concurs with the opinion of the Fourth Circuit,[4] especially in light

---

[3] In coming to this conclusion, the Fourth Circuit specifically rejected the opinion of the Third Circuit:
> The strongest argument against this position is that of Judge Rosenn, writing for the Third Circuit in the Williams case. As he put it simply and directly, any violation of federal law for which the internally imposed sanction is dismissal of charges would seem to involve a "fundamental defect" leading to a "complete miscarriage of justice" and to present "exceptional circumstances" within the meaning of Davis. Williams, 615 F.2d at 590. While the force of this logic has to be recognized, we simply cannot accept its application to this particular violation of the IAD. Underlying the Davis Court's use of those particular terms in the quoted passage is the perception, we think, that only those statutory rights of a fundamental nature so closely related to constitutionally secured rights to fair prosecution and adjudication should be subject to vindication by collateral review of criminal convictions. Though these may include other rights than those directly related to the establishment of guilt or innocence, we do not think they extend to nontraditional statutory guarantees no matter how worthy of purpose that are peripheral to the historic central concerns with fundamental fairness in the prosecutorial and adjudicative processes leading to criminal conviction and confinement.

Bush v. Muncy, 659 F.2d at 409 (citing United States v. Williams, 615 F.2d 585 (3d Cir. 1980)).

Although there is dicta in the Bozeman case which calls this reasoning into question, it does not explicitly overrule the Fourth Circuit's opinion in Bush. See Bozeman at 155-156 (describing how the purpose of the IADA is not simply to "prevent the interruption of rehabilitation," but also possibly to ensure speedy trial rights and prevent the uncertainties that shuttling adds to treatment programs and rehabilitation). Thus, this Court is still constrained by the findings of the Fourth Circuit in Bush.

[4] Because the West Virginia Supreme Court of Appeals refused the petitioner's direct appeal without written opinion, the Court is unable to determine why the petitioner was not afforded relief when his right to relief was evident at the time. See Bozeman, supra. Much like the opinion of Judge Rosenn in Williams, the undersigned believes this process itself is a miscarriage of justice *in this case*. See Williams, 615 F.2d at 590 (noting that because the sanction for a violation of the anti-shuttling provision is dismissal of the charges with prejudice, any violation is a fundamental defect because the absolute defense to prosecution is an exceptional circumstances for which collateral relief is appropriate). Because the state supreme court, without explanation, refused him relief through the proper channels, the petitioner is now foreclosed from any relief whatsoever, even though relief appears to be appropriate. The undersigned acknowledges that the petitioner could have filed a petition for writ of certiorari with the United States Supreme Court, but whether or not the Supreme Court would have granted the writ is pure speculation. Thus, the petitioner has never had any meaningful direct review, which, according to the Fourth Circuit, is the only avenue through which the petitioner could have gained relief.

13

of the petitioner's absence of any other adequate remedy of law, the Court is nevertheless constrained to its finding and must deny the petitioner's claimed IADA violation.[5]

## B. Ineffective Assistance of Counsel

With regard to ineffective assistance of counsel claims, counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, a

---

[5] In his response to the respondent's motion, the petitioner asserts that he was prejudiced by the violation because he "languished" in Ohio without any meaningful contact with his West Virginia case, that he lost contact with key alibi defense witnesses, lost contact with a key search warrant witness, that his attorney took another position, that his co-defendants reached pleas, and that he was denied rehabilitative programs in Ohio. Response to Motion (dckt. 20) at 6-9.

However, the petitioner did not languish in Ohio without meaningful contact with his West Virginia case. The petitioner was incarcerated in Ohio from October 27, 1999 to May 1, 2000. Id. at 7. During that time, the petitioner was able to contact and communicate with his appointed counsel in his West Virginia case. Resp't Ex. 18. Moreover, the petitioner challenged further extradition to West Virginia during that time, as well as, sought dismissal of the West Virginia charges. Id.; Resp't Ex. 11. The petitioner clearly was able to have meaningful contact with his West Virginia case.

As for the petitioner's alibi witnesses, the petitioner asserts that he listed three alibi witnesses for his trial, but that during his six months in Ohio, he lost contact with those witnesses. The petitioner asserts that when counsel then attempted to contact those witnesses for trial, the subpoenas were sent to out-of-date addresses and the witnesses never showed up to testify. The petitioner therefore asserts that had he not been in Ohio, and had continuous contact with his attorney, these witnesses would have been available for trial. The problem with this argument, however, is that it is inaccurate and speculative. The petitioner does not assert that during his stay in Ohio, he did not have any contact with West Virginia counsel. The petitioner could have easily raised these issues with counsel while he was in Ohio. Moreover, the petitioner can do nothing more than speculate that if he had been in West Virginia, rather than Ohio, these witnesses would have been available at the time of trial. The same is true of petitioner's alleged search warrant witness.

As to the petitioner's claim that his attorney took another position, that had absolutely nothing to do with the fact that petitioner was in Ohio. According to his response, the Petitioner's then counsel, Laura Spadaro, took a position with the prosecuting attorney's office. Response to Motion (dckt. 20) at 7-8. Consequently, she would have been required to withdraw from her representation of the petitioner whether he was in Ohio or West Virginia. Moreover, the petitioner was subsequently appointed new counsel.

With regard to the plea agreements reached by the petitioner's co-defendants, the petitioner asserts that his incarceration in Ohio kept him isolated from his co-defendants' plea negotiations, allowing them to shift as much blame on him as possible. However, the petitioner has failed to show how his being in West Virginia would have changed the outcome of those proceedings.

Finally, the petitioner asserts that while he was in Ohio, he was denied rehabilitative classes and educational programs because of the detainer lodged against him by the State of West Virginia. Even assuming this is true, it is not grounds for prejudice in the petitioner's West Virginia proceedings.

14

petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing the reasonableness of counsel's performance, "judicial scrutiny must be highly deferential." Id. at 689-90. Second, if the Court finds that counsel's performance was unreasonable, a petitioner must then demonstrate that he was prejudiced. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a one that is "sufficient to undermine confidence in the outcome." Id.

In the petition, the petitioner asserts that counsel was ineffective for advising him to enter into a plea agreement for the burglary and drug-related charges after he was convicted at trial on the sex-related charges, despite the obvious IADA violations, and without regard to the possibility that such agreement could waive any future IADA claims with regard to those charges. The petitioner's claim falls short, however, when the totality of the circumstances are reviewed.

At the time counsel advised the petitioner to plead guilty to the burglary and drug related charges, the petitioner had already been convicted by a jury of 24 sex related crimes. Moreover, by virtue of the petitioner's plea, the State dismissed several other burglary and drug related charges. In addition, the trial court had already denied the petitioner's motion to dismiss the charges against him for the alleged violations of the IADA. In fact, at the time the issue was brought before the trial court, the law of West Virginia contained an exception to the dismissal requirements of the anti-shuttling provision. See Resp't Ex. 12 (Hearing Transcripts) at 3 (discussing Moore v. White) (establishing an exception to the anti-shuttling provision if the prisoner is returned to the sending state for his own benefit); see also State v. Boyle, 518 F.2d 862 (4th Cir. 1981) (transfer of a federal prison to state authorities for an arraignment and speedy return to federal custody did not violate the

15

agreement on detainers). It was not until the Supreme Court decided <u>Bozeman</u>, seven months after the petitioner was sentenced, that the petitioner even had a viable IADA claim.

Because counsel's performance is measured by the facts and circumstances available at the time services were rendered, for the above-mentioned reasons, counsel's performance was not deficient. To the contrary, given the circumstances, any reasonably prudent attorney would have advised the petitioner in the same manner. Accordingly, ground two is without merit and should be denied.

## IV.  **Recommendation**

For the reasons set forth in this Opinion, it is recommendation of the undersigned that the respondent's Motion for Summary Judgment (dckt. 13) be **GRANTED**, and that the petitioner's § 2254 petition be **DENIED** and **DISMISSED with prejudice.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 21, 2008.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE